UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
:
BARRY CUMMINGS and                       :
HARRY CUMMINGS, Jr.,                     :
Administrator of Estate of Mary Louise   :
Cummings, Deceased                       :
                                         :   CIVIL ACTION
                          Plaintiffs,    :
                                         :
              v.                         :   No. 11-02691
                                         :
ALLSTATE INSURANCE COMPANY,              :
                                         :
                          Defendant.     :
_____ :

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                  **SEPTEMBER 30, 2011**

      Presently before the Court is Defendant, Allstate Insurance Company's ("Allstate") Motion to Dismiss Plaintiff, Barry Cummings, and Harry Cummings, Jr., as administrator of the Estate of Mary Louise Cummings' (the "Decedent") (collectively, "Plaintiffs") Second Amended Complaint. For the foregoing reasons, Allstate's Motion to Dismiss will be denied.

**I.      FACTS**

      Plaintiffs are the sons of the Decedent. Plaintiff, Barry Cummings, and the Decedent resided together at 112 Sunnyside Road, West Grove, PA 19390 (the "Property"). (Second Am. Compl. ¶ 4.) The Property was insured through a Deluxe Homeowner's Policy (the "Policy") with Allstate providing limits of up to $138,000 in "Dwelling Protection" and $100,000 per "occurrence" for Family Liability Protection. (Resp., Ex., F 3.)

      Plaintiffs allege that, on or about May 31, 2009, they suffered a loss covered under the Policy. (Second Am. Compl. ¶ 5.) Specifically, Plaintiffs allege that "water escaped from a

heating or plumbing system and/or collapse of the floor of the residence." (Id.) Plaintiffs further allege that prompt notice of the loss was given to Allstate, and that they otherwise complied with all terms and conditions of the Policy. (Id. ¶ 6.) However, according to Plaintiffs, Allstate denied their claim without any legal justification or cause and it continues to withhold benefits due under the Policy. (Id. ¶ 7.)

Plaintiffs allege that, on or about September 19, 2010, the Decedent tripped and fell on a portion of the damaged floor and sustained injuries to her left leg, which required surgery to correct. (Id. ¶ 10.) Plaintiffs further allege that the Decedent underwent corrective surgery on September 20, 2010, but that, two days later, she suffered a cardiac arrest and died. (Id. ¶¶ 10, 11.) Critically, Plaintiffs allege that Allstate's wrongful denial of their claim was the direct cause of the Decedent's injuries and death, because it had inspected the Property and knew that the collapsed floor represented a serious danger. (Id. ¶ 9.) Although unclear from the Second Amended Complaint, it appears that Plaintiffs also allege that Allstate inspected the loss, thereby acquiring knowledge that denial of their claim could have potentially fatal results. (Id. ¶¶ 8, 19.)

Plaintiff commenced this action against Allstate on May 13, 2010 by filing a Statement of Claim in the Philadelphia County Municipal Court. (Not. of Rem. ¶ 1.) A default judgment was entered in favor of Plaintiff on July 19, 2010 for failure to appear. Allstate appealed the default judgment on August 17, 2010. On August 19, 2010, Plaintiff filed a Complaint in the Philadelphia County Court of Common Pleas. After the Decedent passed away, Plaintiff's brother, Harry William Cummings, Jr. ("Harry Cummings, Jr."), applied for and was granted letters of administration by the Chester County Register of Wills. Thereafter, on April 8, 2011, Plaintiff filed an Amended Complaint alleging breach of the insurance contract, breach of good

faith and fair dealing, and statutory bad faith.  At that time, Plaintiff also added Harry Cummings, Jr., administrator of the Decedent's estate as a plaintiff in this action and included claims for damages for her injury and subsequent death.  On April 22, 2011, Allstate removed the case to this Court.  On April 28, 2011, Allstate filed a Motion to Dismiss Plaintiffs' breach of good faith and fair dealing claim and Plaintiffs' claim for compensatory damages under their statutory bad faith claim.  We granted Allstate's Motion to Dismiss on July 11, 2011 and ordered Plaintiffs to submit a Second Amended Complaint, which Plaintiffs timely filed .

      Plaintiffs' Second Amended Complaint is comprised of two counts.  In Count I, Plaintiffs allege that Allstate breached the contract of insurance by denying benefits due under the Policy without a reasonable basis.  (Second Am. Compl. ¶ 19.)  In Count I, Plaintiffs demand damages for pain and suffering, mental distress anguish, and mental trauma suffered by the Decedent prior to her death pursuant to Pennsylvania's Wrongful Death Act, 42 Pa. C.S. § 8301.[1]  Plaintiffs also demand compensation for the loss of income and services of the Decedent pursuant to

---

[1] 42 Pa. C.S. § 8301 provides, in relevant part:

> An action . . . may be brought to recover damages for the death of an individual caused by *the wrongful act or neglect or unlawful violence or negligence* of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

42 Pa. C.S. § 8301(a) (emphasis added).  The statute further provides: ". . . a plaintiff may recover, in addition to other damages, damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death."  42 Pa. C.S. § 8301(c).

3

Pennsylvania's Survival Act, 42 Pa. C.S. § 8302.[2]  In Count II, Plaintiffs assert a statutory bad faith claim pursuant to 42 Pa. C.S. § 8371.[3]  Therein, they allege that Allstate acted in bad faith through its cursory investigation of the claim, its denial of coverage for the claim without a reasonable basis, its delay in paying the claim, its failure to keep them apprised of the claim status, and its myriad false representations regarding the Policy provisions.  (Id. ¶ 26.)

Allstate now moves to dismiss Count I (Breach of Contract) for failure to state a claim for which relief may be granted.  Allstate offers three reasons for finding that Plaintiffs fail to state a claim for breach of contract as a matter of law.  First, Allstate argues that Pennsylvania does not recognize a claim for wrongful death and survival benefits stemming from a party's breach of a contractual obligation.  Second, Allstate argues that the Policy expressly excludes liability coverage for the Decedent's injuries and death.  Third, Allstate argues that it did not breach the contract because it never assumed a duty of care when it inspected the Property to determine

---

[2] The Survival Act provides: "All causes of actions or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants."  42 Pa. C.S. § 8302.

[3] 42 Pa. C.S. § 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> >
> > (2) Award punitive damages against the insurer.
> >
> > (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371.

Case 2:11-cv-02691-RK Document 11 Filed 09/30/11 Page 5 of 18

coverage. Alternatively, Allstate moves to strike Paragraph 22 of Plaintiffs' Second Amended Complaint, wherein Plaintiffs seek damages "for pain and suffering, mental distress anguish, and mental trauma suffered by Decedent prior to her death, together with all expenses and losses suffered by her Estate as a result of her untimely death pursuant to the Pennsylvania Wrongful Death Act," and the loss of income and services of the Decedent pursuant to Pennsylvania's Survival Act. Allstate argues that we must dismiss Plaintiffs' demand for these consequential damages because Plaintiffs have not shown that it had reason to know of the circumstances responsible for the special damages and to foresee the injury when the contract was formed. Additionally, Allstate moves to strike the Decedent's Estate as a plaintiff in this action because she "was not a party to the insurance contract entered into between Allstate and Barry E. Cummings and covering the property at issue."

## II.   STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007). Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that [they do] not provide a defendant the type of notice which is contemplated by Rule 8." Phillips v. County of Allegheny, 515 F.3d

5

224, 233 (3d Cir. 2008). Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8). Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting Twombly, 550 U.S. at 555). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556).

Notwithstanding Twombly, the basic tenets of the Rule 12(b)(6) have not changed. The Knit With v. Knitting Fever, Inc., No. 08-4221, 2009 U.S. Dist. LEXIS 30230, at *6 (E.D. Pa. Apr. 8, 2009). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515 F.3d at 231. Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. In re Burlington Coat Factories Securities Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). "However, an exception to the general rule is that a 'document *integral to or explicitly relied upon* in the Complaint' may be considered 'without

converting the motion to dismiss into one for summary judgment." Id. (citing Shaw v. Digital Equip Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)).  Furthermore, "a court may consider an undisputedly authentic document that a defendant attaches to a motion to dismiss if the plaintiff's claims are based on the document." In re Donald J. Trump Casino Securities Litigation- Taj Mahal Litig., 7 F.3d 357, 368 n. 9 (3d Cir. 1993) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

### III.   DISCUSSION

#### A.   The Policy

A brief overview of the Policy is helpful to understanding the issues presently before us as Plaintiffs' claims are based on an alleged breach of that Policy and it is integral to Plaintiffs' Second Amended Complaint.  According to the Declarations page, the Policy provides coverage of up to $138,000 for "Dwelling Protection" and coverage of up to $100,000 per occurrence in "Family Liability Protection." (Resp. Ex. F at 3.)  The parties do not dispute that the Property is, for all purposes, the "Dwelling" covered by the Policy.  "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." (Mot. to Dismiss Ex. A at 3.)  Plaintiff, Barry Cummings, was the Named Insured on the Policy and the Decedent was added as an Additional Insured on the Policy through an Additional Insureds Endorsement AU267 (the "Endorsement"). (Resp. Ex. F. at 13.)  The Endorsement provides: "It is agreed that with respect to the insurance that is provided by the [P]olicy to which this endorsement is attached, the term 'Insured Person' also includes the individual(s) named below." (Id.)  The Policy defines an "Insured Person" as "the person named on the Policy Declarations as the

Insured and that person's resident spouse" and, if a resident of the Insured Person's household, "any relative and any dependent person in your care." (Mot. to Dismiss Ex. A at 2, Definitions.)

Section I of the Policy addresses coverage for losses to the Property. In pertinent part, it provides that Allstate "will cover *sudden and accidental* direct physical loss to property" as provided for in the Policy, "except as limited or excluded in [the] [P]olicy." (Id. at 6) (emphasis added). The Policy also provides coverage for "[c]ollapse of a building or any part of a building, but collapse does not include bulging, cracking, expansion, settling or shrinkage." (Id. at 11, ¶ 17.) The Policy specifically excludes coverage for "seepage," which it defines as "continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel: (a) from a plumbing . . . system or from within a domestic appliance; or (b) from, within or around any plumbing fixtures, including, but not limited to . . . sinks or other fixtures designed for the use of water or steam." (Id. at 8, ¶ 16.) An Amendatory Endorsement further excludes from all property coverage:

> Mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, or is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.
>
> ***
>
> This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as directly provided in **Section I, Conditions — Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**.

(Resp. Ex. F at 15) (emphasis in original).

Section II addresses Family Liability and Guest Medical Protection. Under this portion of

the Policy, the coverage is as follows:

> Subject to the terms, conditions, and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.

(Id. at 21.)  Specifically excluded from coverage is "bodily injury to an insured person or property damage to property owned by an insured person whenever any benefit of this coverage would accrue directly or indirectly to any insured person." (Id.)  An additional exclusion under the Guest Medical Protection coverage section provides: "We do not cover bodily injury to any Insured person or regular resident of the insured premises." (Id. at 23.)  "Bodily Injury" is a defined term in the Policy meaning "physical harm to the body, including sickness or disease, and resulting death . . ." (Id. at 2.)  Although Plaintiffs focus their claim on Allstate's denial of their property damage claim, we include the foregoing provisions of the Policy because it may function as a relevant exclusion of Decedent's wrongful death action and Plaintiffs' survival action.  We will discuss this point more fully below.

      **B.**     **Decedent's Estate is Properly Joined**

We will first address whether the Decedent's Estate is properly a party to this action.  Allstate argues that the Decedent's estate should be dismissed from this action as a matter of law, because the Decedent was an "Additional Insured" and not a "*Named Insured*" under the Policy.  (Mot. to Dismiss 15.)  However, despite Allstate's reliance on the distinction between a Named Insured and an Additional Insured, it fails to explain the significance of the distinction either generally or in relation to the Policy currently at issue.  We find that, with regard to the language contained in the Endorsement and the Policy, the rights of the Decedent as an Additional Insured

9

are coextensive with those of the Named Insured, Plaintiff in this action and, thus, the Decedent's Estate is properly joined.

In determining the rights of an Additional Insured, courts look to the language of the policy and, in particular, the language of the additional insured endorsement. See Philadelphia Elec. Co. v. Nationwide Mut. Ins. Co., 721 F. Supp. 740, 742 (E.D. Pa. 1989). Generally, the parties are free to craft coverage for Additional Insureds as they see fit. See Meridian Mut. Ins. Co. v. Cont'l Bus. Ctr., No. Civ. A. 04-1693, 2005 WL 856935, at *7 (E.D. Pa.. Apr. 14, 2005) (noting language in different policies creating varying degrees of coverage for Additional Insureds). The same general insurance contract interpretation principles apply to Additional Insured endorsements. That is:

> In interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, the court must give effect of the language of the contract. However, if the policy provision is ambiguous, the policy provision must be construed in favor of the insured and against the insurer as the drafter of the instrument. Also, the words of the insurance policy must be construed in their natural, plain and ordinary sense. Moreover, an insurance policy, like any other contract, must be read in its entirety and the intent of the policy is gathered from consideration of the entire instrument.

Riccio v. American Republic Ins. Co., 705 A.2d 422, 426 (Pa. 1997).

In this case, the Endorsement provides: "It is agreed that with respect to the insurance that is provided by the [P]olicy to which this endorsement is attached, the term 'Insured Person' also includes the individual(s) named below." (Resp., Ex., F at 13.) The "individual[] named below" is the Decedent. (Id.) Furthermore, the Policy defines an "Insured Person" as "you and, if a resident of your household: (a) any relative; and (b) any dependent person in your care." (Mot. to

Dismiss, Ex. A at 2, Definitions).  Additionally, the Policy defines "You" or "your" as "the person named on the Policy Declarations as the insured [Plaintiff] and that person's resident spouse."  (Id.)  Pursuant to the Endorsement, the Decedent was expressly added as an "Insured Person," even though the Decedent would have fit within the definition of an "Insured Person" by virtue of her residence at the Property and her relation to Plaintiff.  Thus, it is evident from a plain reading of the Endorsement and the defined terms of the Policy that an Additional Insured is the functional equivalent of the Named Insured.

Moreover, an examination of the entire Policy reveals consistently mutual obligations of the Additional and the Named Insured.  At no time does the Policy or the Endorsement apply separate coverage, exclusions, rights, or responsibilities to an "Insured Person," a "Named Insured," or an "Additional Insured."  To the contrary, the Insuring Agreement contained in the Policy provides: "The terms of this [P]olicy impose joint obligations on persons defined as an insured person.  This means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person."  (Mot. to Dismiss, Ex. A at 4.)  In addition, the notice of loss requirements are imposed on the Insured Persons without distinction.  (Id. at 16-17.)   The Policy simply states that, after a loss, "***you*** must: promptly give [Allstate] notice."  (Id.)  Moreover, the Policy extends the right to demand an appraisal of the amount of a loss to "you" generally and without further description or limitation.  (Id. at 19, ¶ 7.)  Lastly, we note that the Policy Condition entitled "Suit Against Us" is noticeably silent with regard to who may bring suit against Allstate.  (Id. at 19, ¶ 12.)  That condition states: "No suit or action may be brought against us unless there has been full compliance with all policy terms.  Any suit or action must be brought within one year after the

inception of loss or damage." (Id.) If the parties wished to limit the right to sue to the Named Insured, they certainly could have written the Policy to incorporate such a limitation. When considered in its entirety, we find that the Policy evidences an intent of the parties to make the rights of the Additional Insured equivalent to those of the Named Insured. Furthermore, given Allstate's lack of explanation regarding the distinction and relative inattention to the Policy's terms, we will deny its Motion to Dismiss the Decedent's Estate as a plaintiff in this action.

Because we find that the Decedent had rights under the Policy co-extensive with those of Plaintiff, her estate may bring claims for breach of the insurance contract and statutory bad faith through application of Pennsylvania's Survival Act. Here, the Decedent is a joint plaintiff and the instant action is a personal one for breach of contract and statutory bad faith. Thus, under the terms of the Survival Act, we find that the Decedent's Estate may proceed with those claims.

      **C.    The Policy's Family Liability and Guest Medical Protection Provisions are Irrelevant to Plaintiffs' Claims**

Allstate argues that Plaintiff's Count I, breach of contract, should be dismissed because the damages stemming from the Decedent's slip and fall are specifically excluded by the Guest Medical Protection of the Policy. That exclusion provides: "We do not cover bodily injury to any Insured person or regular resident of the insured premises." (Id. at 23.) Plaintiffs argue that the Guest Medical Protection exclusion is immaterial, because the alleged breach of contract pertains to the Property coverage provisions. We agree with Plaintiffs that their claims are related only to the Property coverage provisions and that the Family Liability and Guest Medical Protection exclusions do not warrant dismissal of Plaintiffs' damages claims.

We note that Plaintiffs could not bring their claims under the Policy's Family Liability or

Guest Medical Protection provisions. Although the Policy includes "Family Liability" and "Guest Medical Protection" coverage, that coverage is not relevant to the Decedent. Liability insurance is defined as "[i]nsurance that covers suits against the insured for such damages as injury or death to . . . the person or property of another." Black's Law Dictionary 805 (6th ed. 1990). This particular Policy's language similarly limits coverage for bodily injury to persons other than the insureds. It states:

> Subject to the terms, conditions, and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.

(Mot. to Dismiss Ex. A at 21.) The paragraph immediately following the above paragraph discusses Allstate's right to defend suit against its Insured Persons. (Id.) Thus, this section does not afford coverage to the Decedent for her bodily injuries because she is not a third party. Furthermore, the Decedent's bodily injuries are not covered under the Policy's Guest Medical Protection. Under that portion of the Policy, Allstate promises to "pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral expenses; and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals." (Id. at 23.) This coverage extends to, among others, "persons on the [Property] with the permission of an insured person." (Id.) Specifically excluded from Guest Medical Protection are non-guests, or, as stated in the Policy, "any insured person or regular resident of the [Property]." Because the Decedent was an Insured Person and a regular resident of the Property, she is expressly excluded. Thus, we agree with Allstate that the Decedent is not entitled to bodily injury benefits under the Policy's liability coverage.

After examining the pleadings, we find that Plaintiffs are, in fact, bringing their claims under a theory that Allstate breached the contract of insurance by failing to indemnify them for their property loss.  In Paragraph 5 of their Second Amended Complaint, Plaintiffs allege:

> On or about May 31, 2009, while the Policy was in full force and effect, Plaintiff and Plaintiff's Decedent's home suffered a sudden and accidental direct physical loss and damage to the insured property believed to be the result of a peril or perils insured against under the Policy issued by Allstate, to wit, water which escapes from a plumbing or heating system, and/or collapse of the floor in their residence resulting in damage to the insured premises and a consequential loss of use of the premises.

(Second Am. Compl. ¶ 5.)  Plaintiffs further allege that Allstate's refusal to indemnify them for the loss to their property was the direct cause of the Decedent's fall, injuries, and subsequent death.  (Id. ¶ 10.)  In Plaintiffs' Response, they identify three provisions of the Policy under which they believe they are entitled to coverage.  First, Plaintiffs claim that collapse of their kitchen floor was covered under the provision of the Policy extending coverage for: "[c]ollapse of a building or any part of a building, but collapse does not include bulging, cracking, expansion, settling or shrinkage."  (Mot to Dismiss Ex. A at 11, ¶ 17.)  Second, Plaintiffs claim that collapse of their kitchen floor was covered under the provision of the Policy extending coverage for: "Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protection system, or from a household appliance due to accidental discharge or overflow."  (Id. at 11 ¶ 13.)  Third, Plaintiffs claim that collapse of their kitchen floor was covered under an amendatory endorsement adding coverage for "mold, fungus, wet rot and dry rot remediation as a direct result of a covered water loss."  (Resp. Ex. F, Amendatory Endorsement AP 1300 at 4.)  This endorsement provides for up to $10,000 in coverage for such

remediation so long as the remediation is necessitated by a covered water loss. (Id.) In view of the foregoing, it is abundantly clear that Plaintiffs' allegations relate to the Policy's Property provisions and not the Policy's liability provisions. Thus, to the extent that Allstate seeks to dismiss Count I on grounds that the Decedent is excluded from liability coverage, said motion is denied.

### D. Allstate's Consequential Damages Motion

#### 1. Consequential Damages Resulting from a Breach of Contract as a Matter of Law

The parties dispute the availability of the consequential damages demanded by Plaintiffs in Count I for breach of contract. In particular, they dispute whether Plaintiffs may recover consequential damages encompassing "pain and suffering, mental distress anguish, and mental trauma suffered by Decedent prior to her death pursuant to the Pennsylvania Survival Act." (Id. ¶ 22.) The Parties also dispute whether Plaintiffs may recover consequential damages encompassing "all expenses and losses suffered by [Decedent's] Estate as a result of her death pursuant to the Pennsylvania Wrongful Death Statute . . . including loss of income and services . . ." (Id.) Allstate argues that Plaintiffs may not recover damages arising under Pennsylvania's Wrongful Death Statute, 42 Pa. C.S. § 8301, or Survival Act, 42 Pa. C.S. § 8302 (collectively, the "Statutes") under a breach of contract theory, because Pennsylvania law only allows such recovery for actions arising in tort. In support of this argument, Allstate relies on several Pennsylvania decisions discussing recovery under the Statutes in the context of claims for breaches of warranties, including Sacks v. Creasy, 211 F. Supp. 859 (Pa. D. & C. 1962), Frankel v. Styer, 201 F. Supp. 726 (Pa. D. & C. 1962), and DiBelardino v. Lemmon Pharmacal Co., 208

A.2d 283 (Pa. 1965). Allstate counters that the cases cited by Plaintiffs are inapposite because they pre-date Birth Center v. St. Paul Co., 787 A.2d 376 (Pa. 2001), a seminal Pennsylvania bad faith insurance case, holding that traditional contract remedies such as compensatory damages are available in a breach of insurance contract action. 787 A.2d at 387-88. Plaintiffs further argue that Harris v. Kellog, Brown & Root Services, Inc., 618 F. Supp. 2d 400 (W.D. Pa. 2009) (applying Pennsylvania law) establishes that the damages they seek are recoverable because the Harris court allowed an administratrix to bring a wrongful death and survival action for a breach of warranty. The parties have not cited any case law standing for the proposition that the types of damages available under the Statutes are allowed or prohibited under a bad faith breach of an insurance claim.

After careful consideration, we find that the issue of damages in this case must be determined using the foreseeability analysis set forth in Birth Center. We further find that the statutory labels which Plaintiffs have placed on what are essentially consequential damages do not alter this conclusion. Birth Center established that a party injured from a breach of an insurance contract is entitled to the same damages as those resulting from any other contract, including compensatory and consequential damages.[4] 787 A. 2d at 386-87. Here, the damages Plaintiffs seek are the alleged consequences or results of Allstate's bad faith denial of their claim

---

[4] "Compensatory damages are such as will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury." Black's Law Dictionary 390 (6th ed. 1990). "The rationale behind compensatory damages is to restore the injured party to the position he or she was in prior to the injury." Id. In comparison, consequential damages do not "flow directly and immediately from the act of the party, but only from some of the consequences or results of such act." Id. To recover consequential damages, a litigant must prove that they were "reasonably foreseeable" to the parties at the time they entered into the contract. AM/PM Franchise Assoc. v. Atlantic Richfield, 584 A.2d 915, 920-21 (Pa. 1990).

and so, are essentially consequential damages available as a matter of law. Nevertheless, the mere fact that the damages are recoverable does not excuse Plaintiffs from alleging or demonstrating that they were foreseeable and within the contemplation of the parties at the time they entered into the contract. See Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 562 F.3d 591, 597 (3d Cir. 2009) (quoting Ferrer v. Trustees of Univ. of Pa., 825 A.2d 591, 610 (Pa. 2002)). However, as we will explain below, the foreseeability inquiry is premature in light of the fact that it remains to be determined whether a breach occurred.

### 2.   Consequential Damages Dispute is Premature

Issuing a decision regarding the extent of damages available under Plaintiffs' Count I, breach of contract, would be purely speculative at this juncture, given that it has yet to be determined that a breach occurred. It is well established that a district court is not permitted to issue advisory opinions and that there must be an injury-in-fact to adjudicate a dispute. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). A plaintiff asserting a breach of contract claim under Pennsylvania law must establish three elements: (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3) resultant damages. Johnson v. State Farm Life Ins. Co., 695 F. Supp. 2d 201, 212 (W.D. Pa. 2010) (citing Pennsy Supply Inc. v. American Ash Recycling Corp., 895 A.2d 595, 600 (Pa. Super. 2006)).

Here, Plaintiffs sufficiently plead a cause of action for a breach of contract. The first element is undisputed. The parties do not argue over whether the Policy existed and was in effect on the date of the loss. Plaintiffs also allege that Allstate had a duty to investigate and adjust their claim in good faith, which they breached by denying benefits due under the Policy without justification. Plaintiffs further allege that they suffered damages as a result of Allstate's

breach. Nevertheless, the parties dispute whether Allstate actually breached the contract, and we have not yet adjudicated the issue. Oddly, Allstate's Motion focuses on the extent of damages and does not directly address whether its denial of the loss constitutes a breach of the Policy. We find that, absent a finding of a breach or a showing of bad faith, damages are merely speculative and we will refrain from issuing an opinion on the issue at this point in the litigation. Thus, Allstate's Motion to Dismiss Plaintiffs' demand for consequential damages is denied. However, Allstate is free to raise this argument again at an appropriate time in the future.

      An appropriate Order follows.